RICE, RESPONDENT, *v.* CHICAGO, MILWAUKEE & ST. PAUL RY. CO., APPELLANT.

(No. 4,349.)

(Submitted April 18, 1921. Decided May 2, 1921.)

[197 Pac. 999.]

*Carriers—Livestock—Delay in Transportation—Evidence—Custom — Measure of Damages — Instructions — Damages — Ownership of Claim—Assignment for Purpose of Suit—Allegation of Absolute Ownership—Immaterial Variance.*

Carriers—Livestock—Delay in Transportation—Evidence—Custom.

1. In an action for damages to livestock due to delay in transportation, evidence that in shipments comprising ten cars or more it is customary to give the shipper a "stock run," meaning that the cars are attached to a train which stops only for water, coal and change of engines and crews, was properly admitted for the purpose of assisting the jury in determining whether the shipment had been transported with reasonable dispatch, and was not rendered inadmissible by the fact that the contract of shipment was silent as to such custom, and the complaint contained no allegation that it had been entered into with that custom in view.

Same—Measure of Damages—Instruction.

2. An instruction that the measure of damages was the difference between the fair, reasonable market value of the livestock if delivered at destination without negligent delay, and what their reasonable market value was at the time they were delivered in the condition in which they were then, *held* proper under the pleadings and proof.

Same—Damages—Ownership of Claim—Assignment for Purpose of Suit—Immaterial Variance.

3. *Held,* that the variance between plaintiff's allegation asserting ownership of a claim for damages to livestock, by reason of an assignment of it to him by the owner thereof, and evidence to the effect that such owner had merely assigned the claim to plaintiff for the purpose of suit and collection, reserving in himself the beneficiary interest in the result of the action, was immaterial and not one of substance, the defendant not having been prejudiced in its defense by the fact that plaintiff held only a limited and not the actual ownership of the thing in action.

1. Liability of carrier of livestock for delay in transportation, see note in 130 Am. St. Rep. 455.

2. Depreciation in value as result of delay in transporting goods as the measure of damages, see note in Ann. Cas. 1917D, 164, 173, 180.

*Appeal from District Court, Custer County; Daniel L. O'Hern, Judge.*

ACTION by Robert E. Rice against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff. Defendant appeals from an order denying its motion for a new trial. Affirmed.

Cause submitted on briefs of Counsel.

*Mr. Geo. W. Farr* and *Mr. H. H. Fields*, of the Bar of Illinois, for Appellant.

The railway company's duty as a common carrier to the plaintiff is governed by statute and contract, and under our statute, custom cannot be used as proof of any contract or instrument, but only to explain the character of the contract or instrument where such character is not otherwise plain. But in such cases proof of custom is not admissible unless pleaded and it is not pleaded in the case at bar. (*Gilbert* v. *Citizens' Nat. Bank,* 61 Okl. 112, 160 Pac. 635.) And, independent of the statute, the general rule is that custom, to constitute a fixed element of a contract, must be certain, settled and uniform and known to the parties, and they must have contracted in view and contemplation of it. (*Manzke* v. *Goldenberg,* 149 Mo. App. 12, 129 S. W. 32; *Cavanagh* v. *O'Neill,* 20 Misc. Rep. 233, 45 N. Y. Supp. 789; *Robinson* v. *New York & T. S. S. Co.,* 63 App. Div. 211, 71 N. Y. Supp. 424.) The proof of custom, in explanation of an act, or to aid in the interpretation of a contract, is an entirely different thing than proof of custom for the purpose of establishing the existence of a contract, or of introducing an element into a contract that would not be there except for the prevalence of a custom or usage.

This action is by Robert C. Rice, and in the first cause of action he bases his claim for damages because of alleged delay in the shipment of four cars of sheep. The second cause of

action is upon an assigned claim made to him by A. C. Berry for the purpose of the suit only. We submit that the assignment of this claim was not for value or in good faith; that the plaintiff, Rice, did not own the claim at any time; that the contract of assignment was a champertous one and against public policy, and that a recovery of the plaintiff, thereon will not be sustained. (*Huber* v. *Johnson,* 68 Minn. 74, 64 Am. St. Rep. 456, 70 N. W. 806.) The fact that it is claimed that there was a formal written assignment and a nominal consideration of one dollar does not relieve it of its champertous nature. (*The Clara A. McIntyre,* 94 Fed. 552; *Keiper* v. *Miller* (1895), 68 Fed. 627.)

Where a contract for shipment of livestock did not call for any particular market, as is the case with these in question, the carrier is only bound to transport it within a reasonable time. (*McFall* v. *Chicago, B. & Q. R. Co.,* 181 Mo. App. 244, 168 S. W. 344.) And, in order to determine what was a reasonable time, plaintiff should have introduced some competent evidence tending to show the length of time ordinarily required to transport a shipment from the place where received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose. (*Cohn* v. *Chicago & N. W. Ry. Co.,* 100 Neb. 7, 158 N. W. 375.)

The defendant was not bound by its contract with the shipper or by law to transport the sheep within any specified time, nor to deliver the same at destination at any particular hour or for any particular market. Its only obligation was to transport the stock within a reasonable time, and it is held to the exercise of reasonable care and diligence only. And it was incumbent upon the defendant to show not only delay, but that such delay was occasioned by the negligence of the defendant or by one of its succeeding or connecting carriers, and that the sheep were injured in consequence thereof. (*St. Louis, I. M. & S. Ry. Co.* v. *Jones,* 93 Ark. 537, 137 Am. St. Rep. 99, 125 S. W. 1025; *McFall* v. *Chicago, B. & Q. R.*

*Co.,* 181 Mo. App. 244, 168 S. W. 344; *Tiller & Smith* v. *Chicago, B. & Q. R. Co.,* 142 Iowa, 309, 120 N. W. 672; *Baltimore etc. R. Co.* v. *Whitehill,* 104 Md. 295, 64 Atl. 1033; *Ecton* v. *Chicago, B. & Q. Ry. Co.,* 125 Mo. App. 223, 102 S. W. 575; *St. Louis & S. F. R. Co.* v. *Zickafoose,* 39 Okl. 302, 135 Pac. 406.) Where no time for delivery of shipment of livestock is stipulated, the shipper assumes the risk of usual and ordinary delays incident to the ordinary contract of the carrier's business. (*Adams Express Co.* v. *Burr Oak Jersey Farm,* 182 Ky. 116, 206 S. W. 173.)

*Mr. Sharpless Walker,* for Respondent; *Mr. John P. Devaney* and *Mr. Theodore W. Thompson,* of Counsel.

Defendant contends that a claim cannot be assigned for collection and that the assignment in this case was a champertous contract and against public policy, citing *Huber* v. *Johnson,* 68 Minn. 74, 64 Am. St. Rep. 456, 70 N. W. 806. The court holds in this case that the contract under consideration was one which would be likely to stir up strife and conflict and vexatious and speculative litigation, and prevent the amicable compromise of claims between citizens, and it is only on this ground that the court holds that the contract of assignment was champertous and against public policy. There certainly is nothing in the contract of assignment in this case as would manifestly stir up strife and vexatious and speculative litigation. On the other hand, this contract was entered into for the express purpose of trying two lawsuits at one time, and was entered into with the purpose of decreasing litigation and for the purpose of saving the time of attorneys, witnesses and the court. It was a contract not against public policy which, under all the circumstances of the case, would be beneficial not only to the parties themselves but to all those connected with the case including the court.

An action against a railroad company for breach of contract can be assigned. (*Hudson* v. *Kansas Pacific Ry. Co.,*

9 Fed. 879; *Watson* v. *Hoosac Tunnel Line Co.*, 14 Mo. App. 585; *Smith* v. *New York & N. H. Ry. Co.*, 28 Barb. (N. Y.) 605; *Merrill* v. *Grinnell*, 30 N. Y. 594; *Jordan* v. *Welch*, 61 Wash. 569, 112 Pac. 656; *Kansas City, M. & O. Ry. Co.* v. *Shutt*, 24 Okl. 96, 138 Am. St. Rep. 870, 20 Ann. Cas. 255, 104 Pac. 51.) The assignment of a chose in action for the purpose of collection is legal and binding, and is recognized by the courts. (*Greig* v. *Riordan*, 99 Cal. 316, 33 Pac. 550; *Hull* v. *Massachusetts Bonding etc. Co.*, 86 Kan. 342, 120 Pac. 544.)

MR. COMMISSIONER SPENCER prepared the opinion for the court.

The plaintiff in this action bases his right to a recovery upon a complaint which for the first cause of action charges the defendant with receiving four carloads of his sheep on October 10, 1914, for transportation from Miles City, Montana, to South St. Paul, Minnesota, under a shipping contract attached to his complaint and made a part thereof. The defendant is charged with negligence as follows: "That the defendant did not transport said sheep to said South St. Paul, Minnesota, promptly, nor within a reasonable time, but, on the contrary, wrongfully and negligently delayed the transportation thereof for the period of upward of several hours beyond the lapse of a reasonable time for such transportation and delivery and wrongfully and negligently failed to afford the plaintiff or his caretaker and agent who accompanied the said sheep reasonable means or opportunities for unloading, feeding, watering and resting the said sheep from time to time while in transit, but on the contrary wrongfully and negligently kept and confined the said sheep on the cars for great, unlawful, unusual, unnecessary and unreasonable periods of time without food, water or rest, or means or opportunity to plaintiff's said caretaker of securing the same and further, that the said defendant did not use reasonable or ordinary care in and about the handling, care and trans-

portation of the said sheep while the same were actually in transit over its rails and in its possession and under its control as such common carrier, but that the said defendant on the contrary from time to time on a great number of occasions wrongfully, negligently and carelessly started and stopped the train in which said sheep were being transported with great and unnecessary suddenness and violence, thereby throwing said sheep from their feet to the floors of the cars and piling them upon one another in the ends of the cars and that by reason of the premises and all of the foregoing facts, the said sheep while in the possession and under the control of the defendant became bruised, shrunken, gaunted and emaciated and rendered sick, feverish and of stale and unmarketable appearance and condition, lowered in grade, quality and selling and market value, greatly reduced and lessened in weight and seriously injured and damaged,'' and a resultant damage by reason thereof in a decline of market price and loss of weight in transit, thereby depreciating the market value of said sheep.

For a second cause of action plaintiff charges defendant with the same negligence and the same character of damage to fourteen carloads of sheep delivered to and received by the defendant from one A. C. Berry, at the same time and place and for a like purpose, and alleges further that plaintiff is the sole owner of the claim of A. C. Berry against the defendant by virtue of an assignment of said claim to the plaintiff for a valuable consideration. The defendant by answer denies all of the allegations of the complaint as to its liability as a common carrier, as well as all allegations of negligence and elements of damage set forth in both causes of action, and sets up as a further defense to each cause of action a special contract of carriage limiting its liability, and denies that plaintiff is the owner or assignee of the claim of A. C. Berry. Replication of plaintiff denies all allegations of new matter set up in defendant's answer.

Trial was had to a jury; verdict was in favor of plaintiff and judgment subsequently rendered thereon. Appeal is from the order of the court below in refusing to grant the motion of the defendant for a new trial.

Upon the trial in the court below all charges of negligence against the defendant were abandoned, save and except those relating to delay in transportation and damage as a result thereof.

Appellant relies upon nine specifications of error. Evidence [1] was offered and received upon the trial that in livestock shipments over the defendant's road a custom prevailed whereby in livestock shipments, comprising ten or more cars of livestock, they were given what is known as a "stock run." Witnesses testified that by a "stock run" was meant: "A stock run is different than an ordinary freight train in that they give you an engine and crew and caboose, and pull you right through. They just stop at stations along the line to take coal, water and to change engines." And again: "A stock run is where they hook on to you and go, and they don't stop for anything except water and coal and change engines and crews at the division points, unless to meet a train, they don't do any switching or any work on the road."

The plaintiff testified that the agent of defendant at the freight depot in Miles City promised him a stock run from Miles City to his point of destination. Appellant predicates error upon the admission of all testimony explaining what is meant by a "stock run" upon the ground that it was an attempt to prove by custom an element not contained in the contract of shipment. Although the shipping contract was silent as to such custom and the complaint contained no allegation that the contract was entered into with that in view, yet "general usage affecting any branch of business furnishes good evidence of what is regarded as right and reasonable in that respect" (*Parham* v. *Chicago, M. & St. P. Ry. Co.*, 57 Mont. 492, 189 Pac. 227), and as the law imposed upon the defendant the duty to transport the stock in ques-

tion with due care and diligence and with reasonable dispatch, we assume the trial court admitted the testimony upon the theory that if a "stock run" was customary in shipments comprising more than ten cars, such evidence was admissible for purposes of comparison and to assist the jury in determining whether the shipment of the eighteen cars in question, under all the circumstances as disclosed by the evidence, had been transported with reasonable diligence and dispatch, and not for the purpose of proving an element not contained in the contract. We think the assignment is without merit.

Appellant contends that the court erred in its instruction [2] to the jury as to the measure of damages, and admits that the instruction is correct as an abstract statement of law, but not applicable to the facts disclosed by the pleadings and proof in this case. The instruction complained of is as follows: "You are instructed that if you should find the issues in this case in favor of the plaintiff and against the defendant under the evidence and instructions herein given, that the measure of damages is the difference, if any, between what the fair, reasonable market value of these sheep would have been had they been delivered at destination without any negligent delay, if you find that there was a negligent delay, and what the fair and reasonable market value of the said sheep was at the time of delivery at destination in the condition in which they were delivered."

The complaint charges the defendant with certain elements of negligence by reason of which "the said sheep while in the possession and under the control of the defendant became bruised, shrunken, gaunted and emaciated and rendered sick, feverish and of stale and unmarketable appearance and condition, lowered in grade, quality and selling and market value, greatly reduced and lessened in weight and seriously injured and damaged." And again: "On account of such * * * loss of weight in transit, so caused as aforesaid by the negligence of the defendant, the said sheep became and

were damaged and depreciated in market value to the damage
of this plaintiff, *etc.* * * * "

The evidence amply supports the allegations of the com-
plaint. The instruction given was a correct statement of the
measure of damages as applied to the facts herein, as dis-
closed by the proof.

Specifications of error Nos. III, IV and V all relate to the
[3] Berry shipment as set forth in the second cause of action
and may be treated together. Confessedly, a variance exists
between the allegations of the complaint and the proof as to
the ownership of the claim of A. C. Berry against the de-
fendant, and hence the only inquiry that becomes pertinent
is whether or not the variance is material. The complaint
alleges in paragraph fifth of the second cause of action:
"That prior to the commencement of this action, the said
A. C. Berry, for a valuable consideration, sold, assigned, trans-
ferred and delivered to the plaintiff all his right, title and
interest in and to the claim, debt, demand and cause of action
hereinbefore set out, as well as all his right, title and interest
in and to the said livestock shipping contract, bill of lading
or receipt, and that plaintiff is now the sole and lawful owner
and holder of said bill of lading or shipping receipt and
contract, as well as of said claim, demand and cause of
action." And all of the proof upon the trial pertaining
thereto is as follows, witness A. C. Berry testifying for
plaintiff:

"I do not now own this claim against the Milwaukee
company, I have disposed of it. I think I sold it to him.
I gave a written assignment of the claim and cause of action,
but I do not remember the date when that was done. It
had a date on it, and was signed on the date shown on the
assignment. I have no interest in this claim at the present
time. I assigned it to Mr. Rice some time that summer, that
year, but I don't know the date, for the consideration of ·
one dollar. He just gave me a dollar in currency. The
sale took place at my ranch; I don't think there· was any-

one else present besides Mr. Rice and me. There was a written assignment made out at that time, he had it along with him. I had had some previous negotiations with Mr. Rice about selling him this claim for a dollar, prior to that time. These negotiations had been pending for about a month. I don't think there was anyone with Mr. Rice at that time. There was not a representative of Mr. Devaney's office, of St. Paul, present, and I did not talk with any representative of Mr. Devaney's office about selling this claim to Mr. Rice. I had this claim in the hands of Mr. Devaney for collection prior to this. I had talked with them about selling this claim to Mr. Rice for the purpose of bringing this suit, and for that purpose only. I have not been fully paid for the claim, we were going to whack up on the carload lots. I mean on what we got out of this lawsuit. I was going to do the whacking up with Mr. Rice and our attorneys. They ain't doing it for nothing, I guess. That was part of the condition of the assignment of this claim to Mr. Rice, we did that just to try that one case. That was the only purpose of it. In a way, I still have the claim. It is my shipment of sheep. I expect to get the proceeds out of it. If there are any proceeds to be gotten, if we win in this suit, I get what belongs to me. It was not the agreement that Mr. Rice was to get any of this money, if we collect any from the railway company. I don't expect Mr. Rice to get any of this money of these fourteen cars of mine. He is simply bringing this case for me in order to save the money of two suits. He really hasn't any interest in the claim at all."

Witness Robert E. Rice, plaintiff, testifying in his own behalf: "I had an arrangement or agreement with Mr. A. C. Berry, before the commencement of this action, with reference to the disposition of his claim against the railway company, if he had any, on account of the handling of this shipment; a written assignment of this claim was made by him to me and I mailed it to Stiles & Devaney, who were attorneys and who were handling the claim of mine and Mr. Berry's at the time.

The consideration given for the assignment was just one dollar, to make it legal. We had an arrangement or understanding with reference to the proceeds of the suit if we recovered a verdict against the railway company, that we get whatever was coming by carload lots and divide it between us, according to the number of cars that each one had. He said he did not care to assist me in trying the case if I would make such a disposition with him. I didn't understand that I would get anything out of Mr. Berry's shipment in the event of a verdict had, a recovery made in this case. If a recovery is made I only expect to get recovery for the four cars of my own shipment. He was making claim for his fourteen cars and I have nothing to do with his fourteen cars at all, only to make one trial in this case. I am just letting my name be used simply to make a trial. I had hired Stiles & Devaney in St. Paul before for my claim, and Mr. Berry had hired him for his. I have nothing to do with his arrangement, and he has nothing to do with mine. I have no monetary interest in his sheep or in what he may expect to get out of them, at the present time."

Witness C. L. Nichols for the plaintiff: "I was employed by Mr. Devaney in May, 1916, and have been associated with him ever since. In regard to the assignment which has been testified to here, our office received an assignment. I do not know when the assignment was received by Mr. Devaney. I have seen it. It was in the files of this case when the files were turned over to me in May, 1916, with instructions to try the case. I do not now have that assignment. I had it here in Miles City last June when I was here to try the case, and it has been lost by me since then. I have searched through our office files and files in my office, the files of this particular case and also the files in your office, and I have been unable to find it, and I know it has been lost by me. Yes, I made a careful and diligent search to find this assignment. I examined it at the time it was in my possession, and I can now state to the court the contents or the sub-

stance of the contents almost *verbatim*. The assignment I had in my possession bore the signature of Mr. A. C. Berry, I am familiar with his signature and know it was his signature. The assignment was made to Robert E. Rice, the plaintiff in this action. The contents of the assignment, as near as I can remember, read as follows: 'For and in consideration of the sum of one dollar, and for a valuable consideration, I hereby assign and transfer to Robert E. Rice, all my right, title and interest in and to that certain claim and cause of action which I now have against the Chicago, Milwaukee & St. Paul Railway Company, arising from damages sustained by me, by reason of the negligence of that company on a shipment of fourteen carloads of sheep, moved from Miles City, Montana, October 10th, 1914, billed to South St. Paul, Minnesota, and sold on that market on October 13, 1914,' and it was signed A. C. Berry and dated, some time early in August, I have forgotten the exact date of the assignment, some time in August, 1915, somewhere between the first and the 15th. The exact date I am not sure of. I did not draft that assignment myself; I do not know by whom it was drafted. Yes, I examined the assignment, because I didn't want to come out to try the case without the assignment. I read it over; I think not more than once; it was along the lines of the same kind and the same that is used by that office and I am familiar with them. I read it over a year ago, maybe a week more than a year. From reading it over once at that time, I am able to repeat it *verbatim* because, as I said, it was the same kind of assignment used by that office, which has other similar assignments.''

From the foregoing averments of the complaint and the evidence offered in support thereof the departure becomes obvious.

In *Ryan Co.* v. *Russell*, 52 Mont. 596, 161 Pac. 307, 308, Mr. Justice Holloway, in discussing the question of variance between pleading and proof, says: ''Our Codes recognize

three degrees of disagreement between pleadings and proof. A material variance is one which actually misleads the adverse party to his prejudice in maintaining his action or defense upon the merits. (Sec. 6585, Rev. Codes.) An immaterial variance is a discrepancy between the pleading and proof of a character so slight that the adverse party cannot say that he was misled thereby. (Sec. 6586.) A failure of proof results when the evidence offered so far departs from the cause of action pleaded that it may be said fairly that the allegations of the pleading in their general scope and meaning are unproved. (Sec. 6587.) If the variance is a material one, the court should permit the pleading to be amended, upon such terms as may be just. (Sec. 6585.) If the variance is immaterial, the court may direct the facts to be found according to the evidence, or may permit the pleading to be amended without the imposition of terms. (Sec. 6586.) If there is a failure of proof, of course there is no ground for amending, and the offending party is out of court. From necessity these statutes are very general in their terms. No hard-and-fast rule can be prescribed for determining whether in a given instance a party has actually been misled to his prejudice. Every case must depend upon its own peculiar facts and circumstances."

Can it be said that the defendant herein has been actually misled to its prejudice in maintaining its defense to the action upon its merits? We think not. The purpose of the complaint is to advise the defendant of all the material issues it will be called upon to meet, and herein we find the defendant so advised upon all points in issue, among which was that the plaintiff owned the thing in action, the *res* of the suit. Wherein lies the variance? Not in the actual ownership of the claim in controversy, but in the extent or quality of that ownership. The complaint alleges an absolute ownership, and the proof shows a qualified or limited ownership for the purpose of the suit only. The Berry shipment of fourteen cars was made at the same time, in the

same train, handled and conducted in transportation under the same railroad management, destined for the same point and for the same purpose, in fact, under all the same circumstances and conditions as plaintiff's shipment, and hence the same defenses would necessarily lie in the one claim as in the other. The proof establishes the fact that Berry assigned his claim to the plaintiff for the purpose of suit and collection, reserving, however, the beneficial interest in the result of the trial to himself. It was of no possible moment to whom defendant paid the money in event of a recovery, so long as it was protected in case Berry should undertake to reassert his claim again in another action. It was protected by statute in any defense to the Berry claim existing at the time of, or before, the notice of the assignment to plaintiff (Rev. Codes, sec. 6478), and by pleading no defense in its answer, other than a denial of ownership in the plaintiff, it must be conceded that no other defense existed, and we find what first appears as a flagrant variance to be only a departure in an incidental detail and having no relation to substance. Witness Berry having appeared and testified that prior to the action he had assigned his claim to the plaintiff, and for the purpose of the action at least, plaintiff was the owner thereof, and that at the time of the commencement of the suit and the trial the plaintiff still held and retained such ownership, he was forever estopped from reasserting his claim against the defendant, and hence upon no theory could the defendant be prejudiced in its defense whether the plaintiff held the actual or only the limited ownership in the thing in action. We think the variance so slight that the defendant could not be misled thereby to his prejudice. The variance does not amount to a failure of proof because the allegations of the complaint in their general scope and meaning are sustained by competent evidence. We are therefore of the opinion that the trial court committed no error in this behalf, and that assignments III, IV and V cannot be sustained.

Assignments VI and VIII are predicated upon the theory that plaintiff claims damages by reason of decline in market price between the time the sheep should have arrived upon the market and the time the sheep actually did arrive. No proof was offered to show any such decline nor was any claim made upon the trial based thereon. Claim was made and recovery had upon the allegations of loss of weight and loss of market value due to negligence of the defendant, and we think such claim is sustained by competent evidence and appellant's objection is untenable.

Assignment No. VII is without merit as disclosed in the discussion in this opinion of the other errors complained of.

Assignment No. IX is of no materiality upon this appeal and is of private concern only to the defendant and the St. Paul Bridge and Terminal Railway Company.

For the reasons herein set forth, we recommend that the order of the court appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the order appealed from is affirmed.

*Affirmed.*

(Submitted April 18, 1921. Decided May 2, 1921.)